4750, 4751.   CENTRAL OF GEORGIA RAILWAY CO. *v.*
FLEMING, and *vice versa.*.

1. While it is the duty of a carrier of passengers who accepts a sick passenger to exercise due diligence in taking care of him, and to furnish all practical facilities for his safe and comfortable passage, consistent with the conduct of the carrier's business and the comfort and safety of other passengers, this measure of diligence does not require the carrier to place a sick passenger in its baggage-car. It applies only to the transportation of passengers in cars provided for that purpose; and refusal by a conductor of a passenger-car to transport a sick passenger in a baggage-car raises no liability on the part of the carrier.
2. The fact that conductors of passenger-cars had previously permitted sick passengers to be placed in the baggage-car would not vary the rule as announced in the foregoing headnote, and would not give a passenger the right to be transported in the baggage-car. A baggage-car is a place of danger, and a passenger, either sick or well, has no right to demand that the company shall transport him as a passenger in the baggage-car.
                    DECIDED SEPTEMBER 23, 1913.

Action for damages; from city court of Greenville—Judge Revill. January 31, 1913.

Ella May Fleming, as the widow of Henry A. Fleming, sued the Central of Georgia Railway Company for the homicide of her husband. The petition in substance alleges, that he was suffering from appendicitis, and that it was necessary to bring him to Atlanta for an operation; that for this purpose he was taken to a station of the defendant's railway, where a ticket was purchased for him, and a demand was made upon the conductor in charge of the train that, on account of his sickness and inability to sit up, he be taken in the baggage-car as a passenger to Atlanta, the baggage-car being a place where he could recline upon his cot and could be more safely transported than in a passenger-car. The conductor declined to receive him as a passenger in the baggage-car, and directed that he be taken upon his cot into a compartment of a passenger-coach, called a smoking-car. In the smoking-car two seats were thrown in such a way that the cot on which the sick man was being carried could be laid between the two. It is alleged, that there was no place or room for his cot in the smoking-car; that it was necessary to place his cot between two seats thrown together, and that this caused his body to be placed in a bow-like position, which was uncomfortable and dangerous, and which caused the appendix to burst, and the bursting of the appendix caused his death. There is also an allegation that in taking the cot into the smoking compart-

ment, one of the employees who was aiding in this service negligently dropped his end of the cot, but there is no allegation that any injury was caused by this act of negligence. On the contrary, it is distinctly affirmed in the petition that those in charge of Fleming managed the best way they could to place him in the smoking-car according to the instructions of the conductor. It is also alleged that the railway company had been in the habit of transporting sick persons as passengers in the baggage-car, and that this habit was so frequent as to become a custom binding upon the company. The negligence alleged against the defendant, in substance, is the refusal of the conductor to allow Fleming to be taken on the baggage-car as a passenger; it is alleged that the defendant knew his condition, and that "the failure of the defendant company to provide a safe, convenient and comfortable place for the carrying of said Fleming caused his appendix to burst and this caused his death." The defendant demurred to the petition generally and specially. The court sustained some of the special grounds, overruled others, and overruled the general demurrer. To this judgment the defendant excepted. The plaintiff excepted by cross-bill of exceptions to the judgment so far as it sustained the special demurrer.

*Battle & Hollis, McLaughlin & Jones,* for plaintiff in error.

*N. F. Culpepper,* contra.

HILL, C. J. (After stating the foregoing facts.) The trial judge erred in not sustaining the general demurrer. The allegations of the petition were not sufficient to show a cause of action. While railroad companies are required to exercise extraordinary diligence in taking care of their passengers, and, where a passenger is manifestly sick, to furnish him all practical facilities for his safe and comfortable passage, consistent with the conduct of the carrier's business and the comfort and safety of its other passengers, we do not think this rule of diligence requires a railroad company to take any person, either sick or well, as a passenger in its baggage-car. The Civil Code (1910), § 2718, provides that "All conductors or other employees in charge of such cars shall be required to assign all passengers to their respective cars, or compartments of cars," provided for passengers. Section 2717 provides that "All railroads doing business in this State shall furnish equal accommodations, in separate cars, or compartments of cars,

for white and colored passengers," other than sleeping-cars. Section 2719 makes any passenger guilty of a misdemeanor when he refuses to remain in the car, compartment, or seat to which he has been assigned; and it empowers the conductor and any and all employees on such cars to eject from the train or car any passenger who refuses to remain in the car, compartment, or seat assigned to him. The Penal Code (1910), § 539, provides that "Companies operating and using compartment cars or separate cars shall furnish to the passengers comfortable seats, and have such cars well and sufficiently lighted and ventilated;" and that a failure to do so shall be a misdemeanor. These sections of the code impose upon the carrier of passengers specific duties. It is required that equal accommodation be furnished to all passengers, that seats shall be furnished for passengers, and that passenger-cars shall be furnished for passengers. The law requires also that baggage of passengers shall be transported in a baggage-car furnished for that purpose.

Now, the gravamen of the complaint in the present case is that Fleming, the passenger, was not carried in the baggage-car, a car designed, not for passengers, but solely for baggage. It is well known that baggage-cars are not fitted up for the reception of passengers. It has also been frequently held that passengers who ride in baggage-cars assume the risk of that place. A baggage-car is a known place of danger. It is placed ahead of the passenger-cars and next to or near the locomotive. Railroad companies generally, if not universally, provide in their rules and regulations that passengers shall not ride in the baggage-car, and such a rule is not only reasonable, but is also one, we think, which a conductor or other employee has no authority to waive so as to bind the company under ordinary circumstances. 4 Elliott on Railroads, § 1631. But even in the absence of any such rule or regulation, it is manifest from the sections of the code above cited, as well as from common knowledge, that the proper place for a passenger is in a car fitted up for that purpose, and that a baggage-car is a more or less dangerous place. Mr. Beach in his work on Contributory Negligence, §§ 150, 152, goes so far as to lay down the principle that one who rides in a baggage-car is a quasi-trespasser and can not recover as a passenger, no matter whether the injury would have been sustained or not if he had remained in his proper place. We think, therefore, that it is clear that a carrier has the right to

refuse to enter into a contract which would increase the hazard of a passenger, and a passenger can not complain of such refusal. Even if there had been a practice of conductors to take sick passengers in the baggage-car, there is no evidence that it was authorized by the company. Such a practice would certainly be against the spirit of the law set out in the code sections above quoted. A railroad company is not required by law to carry hospital cars, or cars especially for sick people to ride in. It is not required to convert a baggage-car into a car especially for sick people. If it accepts a sick passenger its duty is to place him in a passenger-car in such a position as will insure, so far as possible, his safety and his comfort. Where the carrier does this, the measure of its duty has been fulfilled. We think, therefore, that the trial judge should have sustained the general demurrer and dismissed the petition.

The view that we take of the question raised by the main bill of exceptions renders unnecessary any discussion of the cross-bill.

*Judgment on main bill of exceptions reversed; cross-bill of exceptions dismissed. Russell, J., dissents.*